*********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Homick with minor modifications.
 *********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. I.C. File No. 693582 is an admittedly compensable claim for a December 8, 2006 injury, at which time The Hartford was the carrier on the risk.
5. Following plaintiff's return to work for defendant-employer in February 2007, Farmington Casualty Company/Travelers assumed the insurance coverage.
6. Plaintiff alleges to have sustained an injury on April 17, 2007.
7. Both carriers, Farmington Casualty Company/Travelers and The Hartford, denied compensability of the April 17, 2007 claim (I.C. File No. 764219).
8. Upon Motion of defendant-carrier The Hartford, defendant-carrier Farmington Casualty Company/Travelers was added as a necessary party to the original claim (I.C. File No. 693582) by Order dated July 6, 2007.
9. On or about November 27, 2007, plaintiff filed a Motion to commence payment of benefits by The Hartford.
10. By Order dated January 29, 2008, The Hartford was ordered to pay benefits subject to a full credit should The Hartford prevail after full evidentiary hearing.
11. Pursuant to the Order of January 29, 2008, The Hartford paid benefits to plaintiff retroactive to April 17, 2007 through June 9, 2008. *Page 3 
12. Total benefits paid by The Hartford pursuant to the Order of January 29, 2008 total $7,419.52.
13. An employment relationship existed between the plaintiff and defendant-employer during some or all of the time period of the previous paragraphs.
14. Plaintiff was out of work in connection with these claims from August 14, 2007 to September 17, 2007 and again from March 31, 2008 through August 19, 2008. As of August 20, 2008, plaintiff returned to work for defendant-employer.
15. The parties stipulated to the admissibility of the following documents, which were received into evidence:
 • Exhibit 1: Pre-Trial Agreement;
 • Exhibit 2: Compilation of documents including Industrial Commission Forms, Motions and Orders, Discovery Responses, Recorded Statement, Employment Records and Medical Records (consecutively paginated from 1-420);
 • Exhibit 3: January 29, 2008 Order of the Executive Secretary of the Industrial Commission;
 • Exhibit 4: April 18, 2007 Recorded Statement; and
 • Exhibit 5: Log Notes from The Hartford.
In addition, plaintiff introduced Exhibit 1, a one-page document containing two photographs of plaintiff's legs, which was received into evidence.
16. The stipulated issues for determination by the North Carolina Industrial Commission are as follows: *Page 4 
 a. Whether plaintiff suffered a compensable injury by accident arising out of and in the course and scope of her employment on April 17, 2007?
 b. If so, to what benefits, if any, is plaintiff entitled?
 c. Which carrier is responsible for payment of any benefits?
 d. To the extent The Hartford is deemed entitled to a credit for benefits already paid, to what amount of credit is The Hartford entitled?
Defendant-carrier Farmington's additional issue for determination is whether The Hartford should be sanctioned and/or compelled to pay attorney's fees and costs for defendant-carrier Farmington for its denial of plaintiff's claim?
 *********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 61 years old. Also at the time of the hearing before the Deputy Commissioner, plaintiff had worked for defendant-employer for approximately 22 years as a business office supervisor.
2. Prior to the injuries that are the subject of this claim, plaintiff had a history of knee problems and had treated with Dr. Paul L. Saenger, an orthopedic surgeon, since approximately 2001 or 2002. Dr. Saenger performed an arthroscopic procedure on plaintiff's left knee in 2002, which revealed torn cartilage in one of the meniscal cushions and evidence of degenerative arthritis. Plaintiff also had a total right knee replacement for degenerative arthritis and two subsequent surgical procedures on the right knee.
3. On December 5, 2006, plaintiff had a non-work related fall. Medical records from that date indicate that plaintiff fell because her eyes were dilated following an *Page 5 
ophthalmology appointment. Dr. David Mouw, an internist with defendant-employer, treated plaintiff on the day of the fall. Plaintiff reported to Dr. Mouw that she fell on her knees and outstretched hands but that her sorest spot was her right wrist. Dr. Mouw observed that plaintiff had bruises and developing hematomas on both knees and expected bruising and discoloration to develop and settle into her feet.
4. Three days later, on December 8, 2006, plaintiff injured herself at work when she was stepping out of an elevator that had not properly leveled. Plaintiff tripped and fell to the ground, landing first on her left knee and then on her right knee. X-rays taken at defendant-employer's facility on December 8, 2006 did not reveal any acute findings, only mild degenerative changes in the left knee. A comparison of the x-rays taken on December 8, 2006 with x-rays taken of the same area one year earlier showed no significant changes.
5. Defendant-carrier The Hartford was the carrier on the risk at the time of the December 8, 2006 injury, and it accepted plaintiff's claim as compensable.
6. On December 12, 2006, plaintiff presented to Dr. Suzanne Landis, an internist who works for defendant-employer, who diagnosed plaintiff with a traumatic left leg hematoma. Dr. Landis observed that plaintiff had a large ecchymosis, or bruising, which extended from her left knee down to about six inches above her ankle.
7. At her subsequent visit on December 18, 2006, Dr. Landis opined that, although plaintiff's ecchymosis had improved, plaintiff had developed a tender, warm and swollen area over her left patella. As a result, Dr. Landis recommended a referral to an orthopedic surgeon.
8. On January 9, 2007, plaintiff presented to Dr. Paul L. Saenger, the orthopedic surgeon who had performed her previous knee surgeries. Dr. Saenger noted that plaintiff had anterior knee contusions, left greater than right, with resolving bruising and hematoma. Dr. *Page 6 
Saenger also opined that plaintiff could continue normal activities, as tolerated and did not anticipate any permanent impairment as a result of the December 8, 2006 fall.
9. On February 27, 2007, plaintiff returned to Dr. Saenger for a follow-up appointment. At that time, plaintiff had only missed a few days of work as a result of her December 8, 2006 injury. Dr. Saenger opined that plaintiff had nearly fully recovered from her knee contusions, and that she had reached maximum medical improvement. Dr. Saenger assigned a 0% permanent partial disability rating to plaintiff's left knee.
10. Dr. Saenger opined that plaintiff did not require any additional medical treatment for her left knee, and he released plaintiff to return to full duty work with defendant-employer. Dr. Saenger also testified that he did not observe any ongoing left knee instability, and that plaintiff's December 8, 2006 work injury did not cause plaintiff's left knee to be additionally compromised or unstable.
11. At the hearing, plaintiff testified that, despite Dr. Saenger's opinion that she had reached maximum medical improvement, her knee continued to be painful and she had to regularly elevate her leg at work. Plaintiff's testimony was corroborated by that of a co-worker.
12. On April 17, 2007, plaintiff fell in defendant-employer's parking lot while attempting to step up onto a curb. Plaintiff testified that her leg "gave way" causing her to fall. At this time, defendant-carrier Farmington Casualty Company/Travelers had assumed the insurance coverage for defendant-employer.
13. On April 18, 2007, plaintiff gave a recorded statement to defendant-carrier Farmington regarding her fall on April 17, 2007. Plaintiff stated, "It was about five minutes to 8:00 yesterday morning and I think that what happened when I was walking into work and then we have a curb to step up on, I think when I stepped upon the curb I stepped, I usually kind of *Page 7 
step with my right leg and I missed a step took my left leg and it gave out on me." At the hearing before the Deputy Commissioner, plaintiff clarified that the transcription was inaccurate and she did not miss a step, but rather mis-stepped.
14. On April 26, 2007, plaintiff gave a recorded statement to defendant-carrier The Hartford regarding her fall on April 17, 2007. Plaintiff stated, "Yeah. I fell — my knee gave out on — last week on — gosh, I guess it was on Tuesday. It was kind of like my knee gave out, but I was stepping on a curb, and I can't — I don't know what caused it, but I went down and it hit that same knee, so it still hasn't healed from the other one . . ."
15. On April 17, 2007, plaintiff presented to Dr. Lisa Ray, a family practitioner with defendant-employer. Dr. Ray testified that as a result of plaintiff's April 17, 2007 fall, she sustained a small, superficial hematoma. Dr. Ray diagnosed plaintiff with a contusion of the left knee and lower extremity. An MRI of plaintiff's left knee performed on April 26, 2007 revealed degenerative changes in all three knee joint compartments. Dr. Ray opined that it was plaintiff's underlying knee conditions which contributed to her current pain as opposed to the small hematoma from the April 17, 2007 fall.
16. In approximately July 2007, Dr. Saenger performed a left knee arthroscopy on plaintiff and shortly thereafter, a total left knee replacement. When asked at his deposition whether these two surgeries were related to plaintiff's work injury on December 8, 2006, Dr. Saenger opined that plaintiff had progressive bilateral knee arthritis that was ultimately going to deteriorate to the point that knee replacements would be needed. Dr. Saenger opined that the left knee replacement was independent of the December 8, 2006 injury, and that plaintiff had a "grossly abnormal knee to start with. Her body mechanics are very compromised." Dr. Saenger further opined that plaintiff had a knee that was "going to wear out, that was going to be *Page 8 
symptomatic, had been symptomatic, was going to get worse, and . . . for reasons that she had the other knee done, and this looked essentially the same, was going to ultimately . . . if she wanted to be less symptomatic, was going to require surgery."
17. When questioned at his deposition about whether the December 8, 2006 injury caused or aggravated plaintiff's pre-existing problems to the point that surgery was required, Dr. Saenger opined that the December 8, 2006 injury did not necessitate plaintiff's left knee surgeries. According to Dr. Saenger, plaintiff's left knee replacement was inevitable, even without the intervening injuries. Dr. Saenger opined that the December 8, 2006 fall did not lead to any structural damage that could be appreciated or objectively evaluated beyond what plaintiff already had. Although Dr. Saenger opined on cross examination that the December 8, 2006 fall aggravated an underlying problem enough to cause additional pain that led to surgery, he would not state that but for the fall, plaintiff would not have needed the surgery until she became symptomatic.
18. Considering Dr. Saenger's testimony on cross and direct examination in its entirety, the Full Commission finds that the greater weight of the medical evidence indicates that plaintiff's left knee injury from December 8, 2006 resolved by February 27, 2007, as Dr. Saenger testified, and any inability of plaintiff to work after February 27, 2007 was not as the result of her December 8, 2006 fall. Furthermore, the subsequent left knee arthroscopy and replacement in 2007 were related to plaintiff's pre-existing degenerative arthritis and were inevitable even in the absence of any intervening injuries. Dr. Saenger testified that he did not really know what the medical consequences of plaintiff's December 8, 2006 fall were. The Full Commission finds that the totality of the medical evidence fails to show that plaintiff's December 8, 2006 fall *Page 9 
caused or materially aggravated or accelerated plaintiff's underlying degenerative arthritis, necessitating the surgical procedures she underwent.
19. On May 2, 2007, defendant-carrier The Hartford filed a Form 61 Denial of Workers' Compensation Claim noting that it had accepted the December 8, 2006 left knee injury; however, as plaintiff had been released from Dr. Saenger's care and at maximum medical improvement when she fell on April 17, 2007, it denied further treatment for plaintiff's left knee and alleged that the April 17, 2007 fall was a new accident. Defendant-carrier The Hartford also moved to add defendant-carrier Farmington Casualty Company as a party-defendant. The Motion was granted and Farmington was added as a party on July 6, 2007. Defendant-carrier Farmington Casualty Company/Travelers also denied compensability of the April 17, 2007 accident.
20. Upon referral from Dr. Landis, an internist with defendant-employer, plaintiff presented to Dr. Daniel T. Eglinton, an orthopedic surgeon, on March 10, 2008, with complaints of persistent pain since her left knee arthroscopy and left knee replacement. Dr. Eglinton excised the infrapatellar branch of the saphenous nerve and the prepatellar bursa in an attempt to alleviate some of plaintiff's left knee pain.
21. Dr. Eglinton opined that the treatment he provided to plaintiff was related to her December 8, 2006 work injury. Plaintiff subsequently developed complex regional pain syndrome, which Dr. Eglinton opined was probably related to her December 8, 2006 work injury. Dr. Eglinton referred plaintiff to Dr. Buzzanell for treatment of her complex regional pain syndrome. Dr. Eglinton further opined that it was possible that plaintiff's December 8, 2006 injury could have caused her April 17, 2007 fall. Dr. Eglinton opined that both falls *Page 10 
contributed to the medical treatment that he provided and for which he referred plaintiff to Dr. Buzzanell but was unable to provide a percentage for each.
22. Dr. Saenger is the only physician who treated plaintiff before the December 8, 2006 fall, between the December 8, 2006 and the April 17, 2007 falls, and thereafter. Accordingly, the Full Commission finds that Dr. Saenger is in the best position to assess the effect of the December 8, 2006 and April 17, 2007 falls on plaintiff's left knee and therefore, gives greater weight to his testimony.
23. Plaintiff was out of work due to her left knee surgeries from August 14, 2007 to September 17, 2007 and again from March 31, 2008 through August 19, 2008. As of August 20, 2008, plaintiff returned to work for the defendant-employer.
24. At her deposition on July 21, 2009, Dr. Ray opined that any problems plaintiff continues to experience with her knees would not likely be related to the April 17, 2007 fall.
25. Dr. Saenger opined and the Full Commission finds that by February 27, 2007, plaintiff's injuries from her December 8, 2006 fall had fully resolved and she had returned to a baseline condition. Any additional medical treatment or disability after February 27, 2007 was not related to plaintiff's work injury, but rather to her pre-existing degenerative left knee condition.
26. Based on plaintiff's testimony, recorded statements and the medical evidence of record, the Full Commission finds that plaintiff's left leg unexplainably gave way on April 17, 2007. Dr. Saenger testified there was no instability or weakness in plaintiff's left leg related to the December 8, 2006 injury that would have caused the April 17, 2007 fall. Furthermore, plaintiff failed to show that her fall combined with a risk attributable to her employment to cause her injury. Accordingly, the Full Commission finds that plaintiff's fall on April 17, 2007 was *Page 11 
not related to the December 8, 2006 work injury or her employment, but rather, was related to the underlying degenerative condition of her left knee.
27. Any additional medical treatment or disability after February 27, 2007, the date on which Dr. Saenger considered plaintiff to be at maximum medical improvement with a 0% permanent partial disability rating, was not the result of the compensable accident of December 8, 2006.
28. The medical evidence of record is insufficient to find that plaintiff's December 8, 2006 fall caused or materially aggravated or accelerated plaintiff's underlying degenerative arthritis, necessitating the subsequent surgical procedures.
29. Based on an understanding that there was no dispute as to the compensability of plaintiff's injury and that the only issue to be resolved was which carrier would be liable, the Executive Secretary of the North Carolina Industrial Commission entered an Order on January 29, 2008, compelling defendant-carrier The Hartford to continue payment of temporary total disability benefits and medical compensation to plaintiff as of April 17, 2007. According to the Order, defendant-carrier The Hartford would have a right to a full credit should it prevail after a full evidentiary hearing.
30. Defendant-carrier The Hartford has continued to provide medical benefits and indemnity benefits to plaintiff for the periods she was out of work in connection with her left knee surgeries from August 14, 2007 to September 17, 2007, and again from March 31, 2008 through August 19, 2008. As of August 20, 2008, plaintiff returned to work for defendant-employer. Accordingly, defendant-carrier The Hartford is entitled to a credit in the amount of $7,419.52 against any future benefits payable to plaintiff. *Page 12 
31. The defense of this claim was reasonable and not based on stubborn, unfounded litigiousness and, therefore, defendant-carrier Farmington is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 *********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On December 8, 2006, plaintiff sustained an admittedly compensable injury by accident to her left knee resulting in a traumatic left leg hematoma, which arose out of and in the course of her employment with defendant-employer. However, by February 27, 2007, plaintiff's left knee contusions had resolved and plaintiff had reached maximum medical improvement. Dr. Saenger assigned a 0% permanent partial disability rating to plaintiff's left knee and released plaintiff to return to full duty work with defendant-employer. Accordingly, any additional medical treatment or disability after February 27, 2007 was not the result of plaintiff's compensable accident of December 8, 2006. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of her compensable injury by accident on December 8, 2006, plaintiff is entitled to all medical expenses incurred or to be incurred, for her left knee hematoma for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability, until February 27, 2007, when Dr. Saenger determined that plaintiff was at maximum medical improvement and needed no further medical treatment and released her to return to work. N.C. Gen. Stat. §§ 97-2(19), 97-25. *Page 13 
3. The subsequent treatment and the multiple surgeries to plaintiff's left knee performed by Dr. Saenger were not necessitated by the December 8, 2006 injury or the April 17, 2007 fall, but were related to plaintiff's pre-existing left knee condition. Moreover, the evidence fails to establish that plaintiff's work injury on December 8, 2006 materially aggravated or accelerated plaintiff's pre-existing left knee condition. Therefore, defendant-carrier The Hartford is not responsible for the subsequent left knee surgeries and follow-up medical treatment. N.C. Gen. Stat. §§ 97-2(19),97-25, Holley v. ACTS, Inc., 357 N.C. 228 (2003).
4. "When the employee's idiopathic condition is the sole cause of the injury, the injury does not arise out of the employment. The injury does arise out of the employment if the idiopathic condition of the employee combines with `risk[s] attributable to the employment' to cause the injury." Mills v. City of New Bern,122 N.C.App. 283, 285, 468 S.E.2d 587, 589 (1996) [quotingHollar v. Montclair Furniture Co.,48 N.C.App. 489, 496, 269 S.E.2d 667, 672 (1980)]. In the present matter, plaintiff failed to make the necessary showing of causation that her fall combined with a risk attributable to her employment to cause her injury. Plaintiff's fall on April 17, 2007 was not related to the December 8, 2006 work injury or her employment, but rather to her underlying degenerative left knee condition that pre-existed her work injury of December 8, 2006.
5. Defendant-carrier The Hartford is entitled to a credit in the amount of $7,419.52 against any future benefits payable to plaintiff.
6. Defendant-carrier The Hartford did not defend this action without reasonable grounds and, therefore, defendant-carrier Farmington is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Sparks v. Mountain BreezeRestaurant, 55 N.C.App. 663, 286 S.E.2d 575 (1982). *Page 14 
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant-employer and defendant-carrier The Hartford shall pay all medical expenses incurred or to be incurred as a result of plaintiff's compensable injury by accident to her left knee resulting in a traumatic left leg hematoma, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability, until February 27, 2007, when Dr. Saenger determined that plaintiff was at maximum medical improvement and needed no further medical treatment and released her to return to work.
2. Plaintiff's claim for benefits for her April 17, 2007 accident is denied.
3. Defendant-carrier The Hartford is entitled to a credit in the amount of $7,419.52 against any future benefits payable to plaintiff.
4. Defendant-employer and defendant-carrier The Hartford shall pay the costs.
This the 8th day of June, 2010.
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 CONCURRING: S/___________________ DANNY LEE McDONALD
COMMISSIONER *Page 15 
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1